UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS COOK,<br>   Plaintiff,<br>  v.<br>CHAMPION TANKERS AS,<br>   Defendant. | Case No. 12-cv-01965-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 14 |

In this action for a maritime tort, Defendant Champion moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint on four grounds: (1) res judicata, (2) collateral estoppel, (3) forum non conveniens, and (4) lack of personal jurisdiction. For the reasons set forth below, Champion's motion is GRANTED on the basis of collateral estoppel, or, in the alternative, forum non conveniens.

## I. BACKGROUND

### A. Cook's claims

This action arises out of a collision between two vessels in international waters off the coast of Taiwan on April 26, 2009. Compl. ¶ 5, Dkt. No. 1. Plaintiff Thomas Cook was aboard the S/V Princess Taiping ("Taiping") when the M/V Champion Express ("Express"), which is managed by Defendant Champion Tankers ("Champion"), struck and sunk it. *Id.* ¶¶ 1, 5. Cook alleges that he suffered physical injuries and severe emotional distress as a result of the collision. *Id.* ¶ 8.

Cook brings a maritime tort claim under "General Maritime Law" against Champion for gross negligence and for operating the Express in violation of several International Rules of Navigation. *Id.* ¶ 6.

1    Cook is a citizen of California. *Id.* ¶ 1. Champion is a citizen of Norway. *Id.* ¶ 2.

2    **B.    Prior Actions**

3    On December 30, 2009, two actions were filed in the Eastern District of California for
4    maritime torts arising out of the collision at issue in this action. The two actions were related by
5    the district court.

6    The first is *Kinjo v. Champion Shipping AS*, No. 09-cv-03603 ("*Kinjo*"), which was filed
7    by two Japanese crew members who were aboard the Taiping at the time of the collision. Request
8    for Judicial Notice ("RJN"), Ex. 35, Dkt. No. 22.[1]

9    The second is *Cook v. Champion Shipping*, No. 09-cv-3605, which was filed by six
10   Americans who were aboard the Taiping at the time of the collision, including Cook. RJN, Ex. 2,
11   Dkt. No. 22; *see also Cook v. Champion Shipping*, 732 F. Supp. 2d 1029 (E.D. Cal. 2010) ("*Cook
12   I*").

13   The plaintiffs in *Cook I* brought maritime tort claims against Champion and Champion
14   Shipping, which owns Champion, for gross negligence and violations of several International
15   Rules of Navigation. The plaintiffs did not serve Champion; they did, however, secure *quasi in
16   rem* jurisdiction over Champion Shipping. *See* Toriello Decl. ¶¶ 6, 7, 9, Ex. C, D, Dkt. No. 19;
17   *Cook I*, 732 F. Supp. 2d at 1038 n.3 ("Plaintiffs have secured quasi in rem jurisdiction over
18   Champion Shipping AS, and are presently attempting to secure personal jurisdiction over
19   Champion Tankers AS.").

20   On Champion Shipping's motion, the district court dismissed the claims in *Cook I* on the
21   grounds of forum non conveniens. *See Cook I*, 732 F. Supp. 2d at 1038. The court applied the
22   Ninth Circuit's forum non conveniens balancing test, which requires a district court to determine
23   whether the defendant has shown that (1) an adequate alternative forum exists, and (2) the balance
24   of private and public interest factors favors dismissal.[2] *Contact Lumber Co. v. P.T. Moges*

---

[1] The Court takes judicial notice of the pleadings and other documents filed in *Kinjo* and *Cook I*, because a district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

[2] In determining whether to dismiss an action on the basis of forum non conveniens, district courts in this circuit must consider the following private interest factors: (1) the residence of the parties

*Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990) (citation omitted).

The court in *Cook I* held that California had a "minimal connection" to the plaintiffs' claims, that Hong Kong was an adequate alternative forum for litigating the claims, and that the balance of private and public interests weighed "heavily" in favor of dismissing the action. *Cook I*, 732 F. Supp. 2d at 1038.

With respect to the private interest factors, the court found that they favored dismissal because "the material witnesses residing in Asian countries greatly outnumber those in the United States," "most of the relevant physical evidence, including investigative documents and Taiwan Coast Guard reports, is in Asia," "[n]either plaintiffs nor defendant assert that they have control over this evidence such that it could be brought to court no matter the forum," "plaintiffs' objection to litigation in a foreign forum is substantially diminished by their prior willingness to embark on a trans-Pacific voyage aboard the Taiping," "the cost of bringing witnesses to trial would be substantially less if the claims were litigated in Hong Kong," and "Hong Kong offers a forum in which all claims involving all parties could be tried in one action." *Id.* at 1034-37.

With respect to the public interest factors, the court in *Cook I* found that they also weighed strongly in favor of dismissal "[g]iven the strained judicial and administrative resources in the Eastern District, California's minimal connection to this litigation, and the complex choice of law issues represented by this case." *Id.* at 1037.

Plaintiffs appealed the district court's decision, and the Ninth Circuit affirmed. *See Cook v. Champion Shipping AS*, 463 F. App'x 626 (9th Cir. 2011). While the appeal on *Cook I* was pending, all of the plaintiffs in that case, except for Cook, dismissed their claims with prejudice. RJN, Ex. 38A-38G, Dkt. No. 23; RJN, Ex. 20-24, Dkt. No. 22; RJN, Ex. 36-38, Dkt. No. 22.

---

and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). They also must consider the following public interest factors: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Id.*

3

### C. Procedural History

Before this case was reassigned to this Court, District Judge White granted a stipulated request to bifurcate the issues presented in Champion's motion to dismiss, such that the court would hear and decide the issues of collateral estoppel and res judicata before the parties briefed the issues of forum non conveniens and personal jurisdiction. Dkt. No. 33. In their stipulation, the parties stated that the issues of collateral estoppel and res judicata would require "no preliminary discovery." Dkt. No. 32. Upon review of the briefing on the first two issues, Judge White denied for lack of good cause shown Cook's request for discovery on the issues of res judicata and collateral estoppel and ordered the parties to brief the issue of forum non conveniens. Dkt. No. 39.

## II. DISCUSSION

### A. Res Judicata

Champion moves to dismiss Cook's claims on the basis that they are barred by the doctrine of res judicata. Cook argues that res judicata does not bar his claims, because the dismissal of *Cook I* on the basis of forum non conveniens was not a final determination of the merits.

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citation omitted). Res judicata applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.* (citation omitted).

Here, Cook's claims are not precluded by *Cook I* because *Cook I* was not an adjudication on the merits. Rather, it was a dismissal based on procedural grounds. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A forum non conveniens dismissal den[ies] audience to a case on the merits; it is a determination that the merits should be adjudicated elsewhere") (internal citation and quotation marks omitted); *see also Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994) (noting that "the doctrine of forum non conveniens is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to

1   be declined.  But venue is a matter that goes to process rather than substantive rights--determining

2   which among various competent courts will decide the case").  Accordingly, Champion's motion

3   to dismiss the complaint based on res judicata is DENIED.

### B.    Collateral Estoppel

Champion also moves to dismiss the complaint on the basis that Cook is barred from relitigating the issue of forum non conveniens under the doctrine of collateral estoppel.  Champion contends that the forum non conveniens issue in this case is identical to the one decided in *Cook I*, and that the facts material to the forum non conveniens dismissal in *Cook I* have not changed.  Cook responds that collateral estoppel does not apply because there has, actually, been a change in the material facts.

"[T]o foreclose relitigation of an issue under collateral estoppel, three elements must be met: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action."  *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993) (citation omitted).

Here, all three requirements are satisfied with respect to the dismissal of Cook's claims in *Cook I* on the basis of forum non conveniens.  Accordingly, Champion's motion to dismiss on the ground of collateral estoppel is GRANTED.

### 1.    Identity of the Issue

The Court finds that the identity of issue requirement is met.  "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules."  *See* 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4425 (2d ed. 2012 update).  Here, the forum non conveniens issue decided by the court in *Cook I* is precisely the one presented in this action.  First, the same legal rule, namely the Ninth Circuit's forum non conveniens balancing test, governs both actions.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir.2001) (describing factors that a district court must balance in determining the issue of forum non conveniens).  Second, the

material facts in the two cases are indistinguishable, and Cook presents no new facts that would affect the determination of the forum non conveniens issue.

Citing *Moss v. Nui Phao Mining Joint Venture Co.*, Cook correctly points out that a plaintiff may avoid the preclusive effect of a forum non conveniens determination by showing "objective facts relevant to the issue that materially alter the considerations underlying the previous resolution." No. 10-cv-1634, 2010 WL 3222377, at *2 (N.D. Cal. Aug. 13, 2010). Cook makes several arguments in an effort to show that the facts underlying the court's determination in *Cook I* have changed since that decision was rendered. None of his arguments has merit, however. Though Cook shows that new facts *may* exist, he fails to show that such facts are material to the determination of the forum non conveniens issue. *See* 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4417 (2d ed. 2012 update) ("The possibility that new facts may surround continuation of the same basic conduct should not defeat preclusion unless it is shown that the new facts are relevant under the legal rules that control the outcome.").

First, Cook attempts to distinguish this action from the prior action on the basis that personal jurisdiction in *Cook I* was *quasi in rem* with respect to one of the defendants, while personal jurisdiction in this action is *in personam*. He argues that "it is not clear" that a dismissal in an *in rem* action on the grounds of forum non conveniens can preclude a subsequent action filed *in personam* against a different defendant. Opp'n at 9, Dkt. No. 34. Cook's argument is unpersuasive. First, he cites no controlling authority that establishes that the basis of a district court's exercise of personal jurisdiction has any effect on the application of collateral estoppel to the issue of forum non conveniens. Second, courts routinely hold that a determination in an *in rem* action can have a preclusive effect in a subsequent *in personam* action. *See, e.g.*, *United States v. Banco Intrenacional/Bital S.A.*, 110 F. Supp. 2d 1272, 1277 (C.D. Cal. 2000) (noting that "[t]he claim preclusive effect of successive *in rem* and *in personam* proceedings is a well-settled aspect of the doctrine"); *Anastasiadis v. Mecom*, 265 F. Supp. 959, 960 (S.D. Tex. 1966) (holding that the determination that "the action should properly be pursued in the courts of the Kingdom of Greece" in a prior *in rem* action precluded a new action brought *in personam*). Third, because personal jurisdiction is not a factor that a district court in this circuit must consider in making a

6

1  forum non conveniens determination, and because there is no evidence that the district court in
2  *Cook I* relied on personal jurisdiction in making its forum non conveniens determination, any
3  difference in the type of personal jurisdiction exercised in the two actions is immaterial to whether
4  the issue of forum non conveniens is precluded.
5  　　　　　Second, Cook argues that identity of the parties is necessary for collateral estoppel to
6  apply.  He contends that Champion never rebutted the strong presumption in favor of Cook's
7  choice of forum in *Cook I* because Champion did not participate in that litigation.  Opp'n at 12,
8  Dkt. No. 34.  Identity of the parties is not required for collateral estoppel to apply.  Indeed, a
9  defendant can use collateral estoppel to prevent a plaintiff from relitigating an issue that was
10 finally decided in a lawsuit to which the defendant was not a party.  This is known as defensive
11 collateral estoppel.  *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-30 (1979)
12 ("Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by
13 merely switching adversaries.") (citation and internal quotation marks omitted).  The purpose of
14 defensive collateral estoppel is to "give[] a plaintiff a strong incentive to join all potential
15 defendants in the first action if possible."  *Id.* at 330-331.  Here, Champion can use collateral
16 estoppel defensively to prevent Cook from relitigating the forum non conveniens issue even
17 though it did not participate in *Cook I*.
18 　　　　　Third, Cook argues that Hong Kong is no longer an adequate forum to litigate his claims
19 because the statute of limitations on his claims under the law of the Hong Kong Admiralty Court
20 expired on April 26, 2011.  This development is immaterial to the forum non conveniens analysis
21 for two reasons.  First, nothing prevented Cook from filing in Hong Kong prior to the deadline.
22 The order of dismissal was issued on August 4, 2010, well before the Hong Kong statute of
23 limitations expired.  *See Cook I*, 732 F. Supp. at 1029.  Cook chose to file an appeal in the Ninth
24 Circuit instead of filing suit in Hong Kong, thereby running the risk that the Hong Kong statute of
25 limitations would expire.  When an alternative forum is made unavailable by the plaintiff's own
26 actions, courts do not weigh the potential unavailability of the alternative forum in the plaintiff's
27 favor in conducting the forum non conveniens analysis.  *See, e.g., In re Air Crash Over the Mid-*
28 *Atl.*, 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011) (holding that "[a] party should not be allowed

United States District Court
Northern District of California

7

to assert the unavailability of an alternative forum when the unavailability is a product of its own purposeful conduct") (citation and internal quotation marks omitted); *Castillo v. Shipping Corp. of India*, 606 F. Supp. 497, 504 (S.D.N.Y. 1985). As the court in *Castillo* noted, "[i]t would be a strange world if a litigant could 'bootstrap' himself into a [United States] court by missing the statute of limitations in the proper forum." *Castillo*, 606 F. Supp. at 504. Second, Hong Kong remains an adequate forum for litigating Cook's claims, as Champion has agreed to waive any time bar, to enter an appearance, and to submit to the jurisdiction of the Hong Kong Admiralty Court in the event that Cook's claims are dismissed on the basis of forum non conveniens. Viste Decl. ¶¶ 21-22, Dkt. No. 18; *see Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir.1991) (noting that the requirement of an alternative forum is generally satisfied when the defendant is amenable to process in the other jurisdiction).

Fourth, Cook contends, without providing any support or explanation, that his choice of forum is entitled to more deference now that the other plaintiffs in *Cook I* are no longer involved in the litigation. The logical extension of this argument is that the forum choice of one plaintiff is entitled to more deference than the forum choice of six plaintiffs. The argument is not persuasive given that the court in Cook *I* determined that the forum choice of six plaintiffs was insufficient to overcome the weight accorded to the private and public interest factors, which "strongly" favored dismissal. *See Cook I*, 732 F. Supp. at 1035-36.

Fifth, Cook suggests that the location of the material witnesses has changed. Cook states that the declarant who provided information as to the location of the "crew member" witnesses in *Cook I*, Arne Viste, "can no longer tell us where any of those witnesses reside but can only confirm that they do not work" for Champion or Champion Shipping anymore. Opp'n at 18, Dkt. No. 34. The Court concludes that Cook has not demonstrated the existence of new facts with respect to the material witnesses, as the substance of Viste's declaration with respect to these witnesses has not changed from one action to the other. In both actions, Viste testified that five out of the twenty-four Indian crew members who were aboard the Express at the time of the collision are not under Champion's control and that their last known address is in India. RJN, Ex. 8, Dkt. No. 22; Viste Decl. ¶ 20, Dkt. No. 18. Accordingly, it remains the case, as the court in

*Cook I* found, that "the material witnesses residing in Asian countries greatly outnumber those in the United States." *See Cook I*, 732 F. Supp. at 1035.

Sixth, Cook argues that at this point "it is highly unlikely" that Champion and its agents "do not have control over the physical and evidentiary evidence such that it could be brought to court no matter what the forum." Opp'n at 18, Dkt. No. 34. This argument is speculative and is further rebutted by the declaration of Champion's attorney in Hong Kong, which states that the relevant physical evidence considered by the court in *Cook I* is still in Hong Kong and not within Champion's control. Lamplough Decl. ¶ 7, Dkt. No. 37.

Finally, Cook argues that he should be afforded an opportunity to conduct discovery to show that there are material factual differences between this action and *Cook I* that would prevent the application of res judicata and collateral estoppel to his claims. Opp'n at 22, Dkt. No. 34. Before this case was reassigned to this Court, District Judge White denied Cook's request for discovery on the basis that Cook stated in a stipulation that no discovery on the issues of collateral estoppel and res judicata would be necessary, and that Cook did not show good cause for such discovery.[3] Dkt. No. 39. This Court declines to revisit Judge White's decision.

### 2. Actually Litigated and Necessary to the Judgment

The second and third requirements for the application of collateral estoppel also are satisfied, as Cook litigated the issue of forum non conveniens, not only before the district court in *Cook I*, but also before the Ninth Circuit on appeal. The forum non conveniens issue was necessary to the judgment of both courts, as forum non conveniens was the only basis for the determination that the claims in *Cook I* should be dismissed.

### C. Forum Non Conveniens

Even if Cook were not precluded from relitigating the issue of forum non conveniens, the Court finds dismissal of this action would still be appropriate on the grounds of forums non conveniens, as Hong Kong remains an appropriate forum for litigating Cook's claims and the

---

[3] The stipulation at issue states that "the Parties agree that the issues raised by Defendant's Motion to Dismiss on the bases of Res Judicata and Collateral Estoppel pose no issues of fact, require no preliminary discovery, and may be briefed, submitted and decided as a pure matter of law." Dkt. No. 33.

9

balance of public and private interest factors continues to weigh strongly in favor of dismissal. Accordingly, Champion's motion to dismiss is GRANTED on the alternative ground of forum non conveniens.

A district court has "the discretion to decline jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck*, 236 F.3d at 1142. A party moving for dismissal on forum non conveniens grounds has the burden of showing (1) that an adequate alternative forum exists, and (2) that the balance of private and public interest factors favors dismissal. *Contact Lumber*, 918 F.2d at 1449 (citation omitted). There is a strong presumption to honor a plaintiff's choice of forum that a defendant can rebut by "making a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1236 (9th Cir. 2011). Here, Champion has satisfied its burden under the Ninth Circuit's forum non conveniens balancing test.

### 1. Hong Kong is an Adequate Alternative Forum

Champion has shown that Hong Kong is an adequate alternative forum. Champion has agreed to submit itself to the jurisdiction of the Hong Kong Admiralty Court and to waive the statute of limitations governing Cook's claim in that forum if Cook files a claim within six months of the date this case is dismissed. Viste Decl. ¶¶ 21-22, Dkt. No. 18. *See Lockman*, 930 F.2d at 768 (noting that the requirement of an alternative forum is generally satisfied when the defendant is amenable to process in the other jurisdiction). Moreover, Champion has shown that the Hong Kong Admiralty Court would offer Cook an adequate remedy, namely past and future pecuniary damages, past and future non-pecuniary damages, and possibly attorneys' fees. Lamplough Decl. ¶ 6, Ex. A ¶¶ 4.5.8, 4.9.4.

Cook argues that Hong Kong is not an adequate forum because the statute of limitations that governs his claims in that forum has expired. This argument is unavailing, as Champion has agreed to waive the statute of limitations at issue. Even if it had not, the Ninth Circuit has held that statute of limitations concerns can be cured by "requiring waiver in the foreign forum" before dismissing on the grounds of forum non conveniens." *Carijano*, 643 F.3d at 1235 ("We have

1  affirmed forum non conveniens dismissals that addressed statute of limitations concerns by

2  requiring waiver in the foreign forum."). Here, the Court will require Champion to submit to the

3  jurisdiction of the Hong Kong Admiralty Court and to waive any statute of limitations defenses for

4  two years as a condition for dismissal.

### 2.   The Balance of the Private and Public Interests Favors Dismissal

The Court recognizes that Cook's choice of forum is entitled to great deference. Champion, however, has satisfied its burden to show that the balance of private and public interest factors significantly outweighs the deference owed to Cook's choice of forum. *See Contact Lumber*, 918 F.2d at 1449 (holding that an American citizen's "forum choice should not be given dispositive weight" if "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court") (citation omitted).

#### a.   Private Interests

"Private interest factors include: ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial." *Lockman*, 930 F.2d at 769. Champion has shown that all of these factors weigh strongly in favor of dismissal.

First, Champion has shown that the vast majority of the material witnesses are in Asia and that the vast majority of the material witnesses who reside in the United States have agreed to testify in Hong Kong. Of the thirty-six individuals most likely to give testimony material to Cook's claims, thirty reside in Asia and cannot be compelled to testify in the United States.[4] At the time of the collision, the crew of the Express consisted of twenty-five people, all residents of India except for one Greek crew member. Viste Decl., ¶ 20, Ex. 2, Dkt. No. 18. The crew of the Taiping consisted of eleven people, two of whom are Taiwanese, one of whom is Chinese, two of whom are Japanese (the plaintiffs in *Kinjo*), and six of whom are American (the plaintiffs in *Cook*

---

[4] Cook has submitted declarations showing that the Taiping's Taiwanese master and a Taiwanese crew member have agreed to testify in San Francisco. Ning Sheng Decl. ¶ 5; Hsiu-Ying Decl. ¶ 5. This evidence does not affect the conclusion that the vast majority of material witnesses are located in Asia.

*I*). Spearing Decl., Ex. A, ¶ 9, Dkt. No. 19. Of the six Americans, five have agreed to give testimony in Hong Kong. RJN, Ex. 38, Dkt. No. 22.

Second, the cost of bringing the material witnesses to trial would be substantially less if Cook's claims were litigated in Hong Kong as opposed to San Francisco, because most of these witnesses reside in countries that are closer to Hong Kong than to San Francisco. Second Toriello Decl. ¶ 4, Dkt. No. 48.[5]

Third, Champion has shown that the material physical and documentary evidence is in Asia. *See* Viste Supp. Decl. ¶ 6; Toriello Supp. Decl. ¶ 6, Dkt. No. 22; Viste Decl. ¶ 20, Dkt. No. 18. This evidence includes the reports issued by the Taiwanese Air Force and Coast Guard, which rescued and interviewed the crew and passengers of the Taiping; a survey of the Express conducted in Shanghai; and the relevant documentary evidence about the design and seaworthiness of the Taiping, which is located in either Hong Kong, where it was registered, or the People's Republic of China, where it was built. Lamplough Decl. ¶ 6, Ex. A, ¶ 3.3-3.6, Dkt. No. 21. Neither Cook nor Champion assert that they have control over this evidence such that it could be brought to San Francisco. Accordingly, the evidence's foreign location weighs in favor of dismissing Cook's claims. *See Lueck*, 236 F.3d at 1146 (holding that the foreign location of documentary evidence weighed in favor of dismissal where it was not in the plaintiff's control or under the control of a foreign government).

Fourth, Champion has shown that Hong Kong is a forum in which all claims arising out of the collision at issue can be litigated in one action. It also has shown that all claims arising out of the collision, except for Cook's, currently are being litigated in the Hong Kong Admiralty Court. These showings weigh strongly in favor of dismissal. *See Contact Lumber*, 918 F.2d at 1452 (noting that when "[n[umerous lawsuits arise from the same casualty" and such lawsuits can be

---

[5] Cook moves to strike two declarations that Champion filed in connection with its supplemental reply on the forum non conveniens issue. Dkt. No. 50; *see also* Third Lamplough Decl., Dkt. No. 47; Second Toriello Decl., Dkt. No. 48. Cook argues that the declarations should be stricken because they "raise new matters" and Cook does not have an opportunity to respond to them. Dkt. No. 50 at 2. As the facts presented in the declarations at issue respond directly to matters raised in Cook's opposition brief, Cook's motion to strike is DENIED.

litigated in one foreign forum, "the relative convenience of the parties is furthered by dismissal"). Champion Shipping invoked the jurisdiction of the Hong Kong Admiralty Court in 2009 by initiating a limitation action to provide a single forum for resolving all claims arising out of the collision. Lamplough Decl. ¶ 6, Ex. A ¶ 3.7. Currently, two intership actions and three personal injury actions are pending in the Hong Kong Admiralty Court. Lamplough Decl. ¶¶ 9-13. The personal injury actions are brought by two crew members and one passenger of the Taiping. *Id.* Moreover, as discussed above, Cook's claims also can be litigated before the Hong Kong Admiralty Court because Champion has agreed to "waive any time bar, enter an appearance, and submit to the jurisdiction of the Hong Kong Admiralty Court." Viste Decl. ¶ 22.

Cook argues that he is an individual of modest means and that he lacks the resources to litigate his claims in Hong Kong. Cook Decl. ¶ 11. While the Court acknowledges Cook's financial situation, the Court finds that dismissal is nonetheless appropriate because Cook voluntarily exposed himself to the risks associated with embarking on a trans-Pacific voyage aboard the Taiping. *See Contact Lumber*, 918 F.2d at 1449-50 ("In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.") (citation omitted).

### b.     **Public Interests**

The public interests factors include: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1147.

The Court finds that these factors weigh strongly in favor of dismissal. First, California has little interest in litigation arising out of events that took place in Asia and in which the vast majority of the individuals and property involved has no connection to the United States. Second, the resolution of this action would impose unreasonable costs on this Court and local juries given the extremely attenuated connection that California has to the dispute.

//

13

**D.     Personal Jurisdiction**

Because the Court finds that dismissal of this action is appropriate on the grounds of collateral estoppel and forum non conveniens, the Court does not reach the issue of whether it has personal jurisdiction over Champion.

### III.     CONCLUSION

Champion's motion to DISMISS this action is GRANTED on the grounds of collateral estoppel, and in the alternative, forum non conveniens. As a condition to dismissing this action, Champion must submit to the jurisdiction of the Hong Kong Admiralty Court for the purpose of resolving Cook's claims. Additionally, as long as Cook files claims in the Hong Kong Admiralty Court within two years of the date this Order is issued, Champion must waive any defenses regarding statutes of limitations.

**IT IS SO ORDERED**.

Dated: April 15, 2013

_____
JON S. TIGAR
United States District Judge